IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PAMELA KEANINI | ) | CIVIL NO. 13-00495 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION TO |
| | ) | COMPEL ARBITRATION AND TO |
| vs. | ) | STAY PROCEEDINGS |
| | ) | |
| UNITED HEALTHCARE SERVICES, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

I.        **INTRODUCTION.**

        Defendant United Healthcare Services, Inc. ("United Healthcare"), moves to compel arbitration of all but one of Plaintiff Pamela Keanini's ("Keanini") claims in her Complaint filed on March 8, 2013, and to stay proceedings on all claims in this action pending the outcome of arbitration.  Because the arbitration policy at issue is unenforceable, the court denies United Healthcare's motion to compel arbitration and to stay proceedings pending arbitration.  The court further determines that, even if the arbitration policy were enforceable, arbitration could not be compelled at this time because there is a factual dispute as to whether Keanini agreed to arbitrate this dispute.

II.        **FACTUAL BACKGROUND.**

On August 18, 2008, Keanini began working as a Field

Services Coordinator for United Healthcare, a wholly owned

subsidiary of UnitedHealth Group.  ECF No. 17, PageID # 161, 180;

ECF No. 20, PageID # 222.

According to United Healthcare, its newly hired

employees are required to complete and electronically submit

various forms, including the "UnitedHealth Group Employment

Arbitration Policy" (the "Arbitration Policy") on UnitedHealth

Group's intranet, HR Direct Self Service.  ECF No. 17, PageID #

161; ECF No. 23, PageID # 239.

United Healthcare contends that HR Direct Self Service

tracks when an employee accesses and acknowledges the Arbitration

Policy.  ECF No. 23, PageID # 240-41.  An employee acknowledges

the Arbitration Policy by typing in his or her name on a

signature line and clicking on a box that says "I have read and

agree to the above."  Id., PageID # 241-42.  United Healthcare

alleges that Keanini acknowledged that she read and agreed to the

Arbitration Policy on September 17, 2008.  ECF No. 17, PageID #

161.

The Arbitration Policy provides that United Healthcare

and any employee agreeing to the Policy must resolve certain

employment-related disputes through arbitration conducted

pursuant to the version of the Arbitration Policy in effect when

2

arbitration is demanded.  ECF No. 17, PageID # 196, 202.  The
Arbitration Policy in effect at the time Keanini filed her
Complaint had been amended effective January 1, 2012, several
years after Keanini began working for United Healthcare.  The
2012 version of the Arbitration Policy states:

> A dispute is based on a legal claim and is
> subject to this Policy if it is not
> specifically excluded from the Policy
> and if it arises from or involves a claim
> under any federal, state or local statute,
> ordinance, regulation or common law doctrine
> regarding or relating to employment
> discrimination, terms and conditions of
> employment, or termination of employment
> including, but not limited to, the following:
> the Age Discrimination in Employment Act, the
> Americans With Disabilities Act, the Family
> and Medical Leave Act, the Fair Labor
> Standards Act, and all applicable amendments
> and regulations; Title II of the Genetic
> Information Nondiscrimination Act of 2008;
> state human rights and non-discrimination
> laws; whistleblower or retaliation claims;
> breach of contract, promissory estoppel, or
> any other contract claim, and defamation,
> employment negligence, or any other tort
> claim not specifically excluded from
> coverage. Claims excluded from mandatory
> arbitration under the Policy are claims under
> Title VII of the Civil Rights Act of 1964 or
> any tort related to or arising out of sexual
> assault or harassment, including assault and
> battery, intentional infliction of emotional
> distress, false imprisonment, or negligent
> hiring, supervision, or retention; and claims
> that, pursuant to the Dodd-Frank Wall Street
> Reform and Consumer Protection Act, are not
> subject to mandatory pre-dispute arbitration.
> Such claims may be brought in arbitration
> under this Policy if the claimant so chooses.

Id., PageID # 204.

3

Keanini's Complaint alleges that she was a Field Service Coordinator who interacted with United Healthcare's clients. She says that she was disciplined in August 2011 for having failed to meet all the requirements for recording client contact. She says she met with her supervisor for reviews of her work, and that she also met with United Healthcare's President, who allegedly agreed that Keanini's caseload was too high to allow compliance with the company's requirements for recording client contact. According to Keanini, she complained that United Healthcare was violating State of Hawaii law regarding caseload assignments. She also alleges that she complained about race discrimination. She says she was fired on February 17, 2012, filed a charge with the EEOC, and received a right-to-sue letter. ECF No. 1-1.

United Healthcare asserts that the following claims in Keanini's Complaint, filed on March 8, 2013, fall under the Arbitration Policy: (1) violation of the Age Discrimination in Employment Act (Count I); (2) infliction of emotional distress (Count II); (3) defamation (Count III); (4) retaliation (Count IV); and (5) violation of the Whistleblower's Protection Act, Haw. Rev. Stat. § 378-62 (Count V). Id., PageID # 160.

Keanini alleges that she never received and never signed the Arbitration Policy, and that United Healthcare has failed to meet its initial burden of establishing the existence

of an arbitration agreement between the parties.  ECF No. 20,
PageID # 226; ECF No. 21, PageID # 228.

**III.     STANDARD.**

**A.   Motion to Compel Arbitration.**

The Federal Arbitration Act ("FAA") applies to
arbitration provisions in "contract[s] evidencing a transaction
involving commerce[.]"  9 U.S.C. § 2; see also Chiron Corp. v.
Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).
"Employment contracts, except for those covering workers engaged
in transportation, are covered by the FAA."  E.E.O.C. v. Waffle
House, Inc., 534 U.S. 279, 289 (2002).

Under the FAA, a court considering a motion to compel
arbitration must determine: "(1) whether a valid agreement to
arbitrate exists and, if it does, (2) whether the agreement
encompasses the dispute at issue."  Lee v. Intelius Inc., 737
F.3d 1254, 1261 (9th Cir. 2013) (internal quotation marks and
citation omitted).

In determining whether a valid agreement to arbitrate
exists, the court applies state law contract principles.  Lowden
v. T-Mobile USA, Inc., 512 F.3d 1213, 1217 (9th Cir. 2008).  In
Hawaii, a valid arbitration agreement "must have the following
three elements: (1) it must be in writing; (2) it must be
unambiguous as to the intent to submit disputes or controversies
to arbitration; and (3) there must be bilateral consideration."

Douglass v. Pflueger Hawaii, Inc., 110 Haw. 520, 531, 135 P.3d 129, 140 (2006); see also Doyle v. Hawaiian Cement, No. 08-00017 JMS/KSC, 2008 WL 2230734, at *4 (D. Haw. May 29, 2008).

"The party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists between the parties." Siopes v. Kaiser Found. Health Plan, Inc., 130 Haw. 437, 446, 312 P.3d 869, 878 (2013). If this initial burden is satisfied, "the burden shifts to the opposing party to present evidence on its defenses to the arbitration agreement." Id. (internal quotation marks and citation omitted).

**B. Motion to Stay Proceedings Pending Arbitration.**

Section 3 of the FAA (9 U.S.C. § 3) outlines the circumstances under which a court must stay proceedings pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**IV.      ANALYSIS.**

**A.    The Arbitration Policy is Unenforceable.**

The Arbitration Policy at issue in this case is unenforceable, even assuming Keanini signed it, because it lacks bilateral consideration, as required under Hawaii law for the existence of a valid arbitration agreement.  See Doyle, 2008 WL 2230734, at *4.

In Douglass, the Hawaii Supreme Court concluded that an arbitration agreement failed for lack of consideration, even though both parties had waived their rights to litigate disputes in court, because the employer retained the right to change the employee handbook containing the arbitration policy at any time. Id. at 535, 135 P.3d at 144.  The court noted that enforcing an agreement that an employer retains a right to alter, amend, or revoke "would be to create a contract where only one party is bound," and that the proper result is to conclude that "the reservation of rights language . . . renders the purported arbitration agreement illusory" and, therefore, without force. Id. (citation omitted).

The Arbitration Policy before this court allows the employer to amend or terminate the policy:

> UnitedHealth Group reserves the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification or termination of the Policy

7

.  .  .  .

                    All arbitrations shall be conducted in
                    accordance with the Policy in effect on the
                    date the Corporate Employee Relations
                    Department receives the Demand for
                    Arbitration.

ECF No. 17-4, PageID # 202.[1]  Like the employer in <u>Douglass</u>,

United Healthcare remains free to escape from the agreement,

rendering the Arbitration Policy unenforceable.

          Admittedly, United Healthcare must provide notice of

its intent to amend, modify, or terminate the agreement, and any

changes can only be effective beginning January 1 of the coming

year.  However, United Healthcare retains sole discretion to make

any such change, leaving the employee with no recourse short of

resignation.  The preliminary steps the employer must take in the

present case before altering or terminating the agreement do not

overcome the holding in <u>Douglass</u> that an arbitration agreement in

which an employer retains the unilateral right to amend or revoke

the agreement is unenforceable.  Requiring notice and a delay in

implementation, while providing an employee with no opportunity

to object or to take any action short of resignation, still

leaves the employer free to change or terminate the Arbitration

Policy.

_____

          [1] The reference in the Arbitration Policy to UnitedHealth
Group is a reference to UnitedHealth Group Incorporated and its
subsidiaries, including United Healthcare.  ECF No. 17-4, PageID
# 196.

Moreover, it appears that even when the employer knows of a potential claim, the employer may amend or terminate the policy before the employee submits a formal demand for arbitration. Even with the delay in the effective date of the amendment or termination, an employee could be left with as little as 30 days to file a claim and demand arbitration. Here, for example, Keanini alleges that she complained to United Healthcare about race discrimination and that United Healthcare retaliated against her in response. She also says she complained about violations of state law regarding caseload assignments. To the extent United Healthcare knew that there were at least potential claims she might bring, United Healthcare could have amended the Arbitration Policy to make it more favorable to United Healthcare with respect to those very claims.

The 30-day notice provision and the January 1 effective date of any amendment to the Arbitration Policy in no way guarantee that the employer could not act so quickly in amending the Arbitration Policy as to prejudice an employee. The employer, knowing that an employee is contemplating making a claim, may immediately give notice of an amendment that might prejudice that particular employee. To avoid having the amendment apply to that claim, an employee in certain circumstances might have to react with unreasonable alacrity.

Although Keanini was fired a month after amendments to the Arbitration Policy took effect, the court is certainly not saying that United Healthcare made those amendments to prejudice Keanini. In fact, the amendments may have been beneficial to her. But whether the notice requirement, delayed effective date, and nonapplicability to ongoing arbitration actions constitute consideration must be examined not by what actually occurred but by what the Arbitration Policy allowed.

Of course, it will not always be the case that an employee will be forced to act quickly. If United Healthcare announced its intent to amend the Arbitration Policy in February of any year, an employee could avoid the impact of that amendment by demanding arbitration by the end of that calendar year. In that circumstance, the employee would probably not be prejudiced by an amendment. But the court has in mind a different hypothetical employee who, unschooled in the law, is dealing first with her direct supervisor, then with other supervisors higher up the company chain, and with the company's EEO officer or Human Resources Department. Months may pass, and the employee may not be savvy enough to demand arbitration as December nears. If an amendment is announced on December 1, it will take effect in a month. Unless the employee is watchful, the amendment will apply to her claim.

At the hearing on the present motion, United
Healthcare's counsel cited Hardin v. First Cash Financial
Services., Inc., 465 F.3d 470 (10th Cir. 2006), in support of
United Healthcare's position that the Arbitration Policy is not
illusory.  Hardin involved the application of Oklahoma law, not
the Hawaii law applicable here.  Moreover, the employer in Hardin
was actually agreeing to more than United Healthcare says it
agreed to.

Hardin involved discrimination claims by an employee.
The employer sought to compel arbitration under an arbitration
agreement that allowed amendment or termination of the agreement
by the employer, provided that any amendment or termination would
not take effect "until 10 days after reasonable notice of
termination is given to Employee or as to claims, disputes, or
controversies which arose prior to the date of termination."  Id.
at 478.  In rejecting the employee's argument that the agreement
was illusory, the Tenth Circuit, applying Oklahoma law, relied
not only on the 10-day notice requirement, but also on the
court's understanding that the employer could not amend the
agreement if it had "actual notice of a potential dispute or
claim" or if the "claims . . . arose prior to the date of
termination."  Id.  Although the notice period in the Arbitration
Policy before the court is longer than it was in Hardin, and the
effective date of any amendment is delayed until January 1,

United Healthcare is not barred, as the employer was in <u>Hardin</u>, from applying amendments even to disputes it is aware might be raised.  United Healthcare must, if it seeks to avoid a bar, act quickly to amend the Arbitration Policy, but the employer is usually positioned to act far more quickly than an individual employee can.

In determining that the agreement in <u>Hardin</u> was not illusory, the Tenth Circuit cited <u>In re Halliburton Co.</u>, 80 S.W.3d 566, 569-70 (Tex. 2002), which rejected the argument that an arbitration agreement was illusory.  That agreement included a 10-day notice requirement for any amendment and also provided that "no amendment shall apply to a dispute of which the [employer] had actual notice on the date of the amendment."

While the Tenth Circuit also quoted and relied on <u>Wilson v. Gifford-Hill & Co., Inc.</u>, 570 P.2d 624 (Okla. Ct. App. 1977), the circumstances of that case are far removed from those in issue here.  What the Tenth Circuit said in <u>Hardin</u> was: "While the 'reservation of a unilateral right to cancel [an] entire agreement is so broad as to negate the existence of any consideration in that the promise is essentially empty or illusory,' if 'notice of cancellation is required the promisor is bound sufficiently so that his promise to buy or give notice of cancellation meets the requirement of consideration.'"  <u>Hardin</u>, 465 F.3d at 478 (quoting <u>Wilson</u>, 570 P.2d at 626).  <u>Wilson</u> did

12

not involve an arbitration agreement at all.  Nor did it involve
an employment context.  Instead, Wilson involved a contract to
buy three sprinklers.

The plaintiff in Wilson alleged that the third
sprinkler had not been delivered or installed.  The matter was
tried, and the jury found for the plaintiff.  The seller
appealed, arguing that the sales contract was illusory because
the buyer had retained the right to cancel the contract 30 days
before delivery.  Citing "text writers" for the language later
quoted by the Tenth Circuit in Hardin, the Wilson court noted
uncertainty about the enforceability of the right to cancel "due
to the ambiguity of what the phrase 'delivery date' meant (the
agreement apparently contemplated 3 deliveries)," but noted that
"this issue was nowhere raised and we do not decide it."  The
Wilson court concluded that the contract was adequately supported
by consideration "in light of the record and the manner that the
mutuality issue was raised."  570 P.2d at 626.  It is not at all
clear that Wilson would support a conclusion that the Arbitration
Policy before this court is enforceable.

The Ninth Circuit, applying California law, found both
procedural and substantive unconscionability in an arbitration
clause in Ingle v. Circuit City Stores, Inc.,  (9th Cir. 2003).
That clause, contained in a broader employment agreement, allowed
the employer to "alter or terminate the Agreement and these

Dispute Resolution Rules and Procedures on December 31st of any year upon giving 30 calendar days written notice to Associates." Id. at 1179. The Ninth Circuit said, "Although the agreement requires Circuit City to provide exiguous notice to its employees of termination or any modification, such notice is trivial when there is no meaningful opportunity to negotiate the terms of the agreement." Id. The Ninth Circuit went on to say that this "unilateral power to terminate or modify" rendered the arbitration provision "substantively unconscionable," although the court drew no conclusion as to whether the unconscionable provision rendered the contract unenforceable. Id. at 1179-80 & n.23.

The circumstances and the notice language in Ingle are similar to what is before this court. The Arbitration Policy before this court does improve on the Ingle provision by saying that the Arbitration Policy in effect when an arbitration demand is filed shall govern. That is, an amendment during the pendency of an arbitration proceeding will not affect the pending proceeding. This restriction still allows an employer that knows about a claim, albeit a claim that has not yet become the subject of an arbitration demand, to amend the Arbitration Policy to the employer's advantage. Delaying the effective date of the amendment until January 1 may sometimes give an employee a sufficient opportunity to submit an arbitration demand before the

change takes effect, but may sometimes give the employee an inordinately short 30-day period.

This court realizes that some courts have enforced arbitration agreements like the one in issue in the present case. For example, in Pierce v. Kellogg, Brown & Root, Inc., 245 F. Supp. 2d 1212 (D. Okla. 2003), a case cited in the Tenth Circuit's Hardin decision, the court, applying Oklahoma law, enforced an arbitration agreement that allowed amendment or termination on 10 days' notice, but that provided that any amendment or termination was inapplicable to existing arbitration proceedings. But several other courts, noting the same concern this court has about application of amendments to claims that the employer has reason to know might be brought in the future, have concluded that arbitration agreements are illusory if, without regard to whether arbitration demands have been made, the agreements do not exempt claims that accrued or were known to the employer.

The Fifth Circuit, in Morrison v. Amway Corp., 517 F.3d 248, 254 (5th Cir. 2008), applying Texas law, was concerned that the arbitration provision before it could be unilaterally amended by Amway by publication of notice of an amendment, and that nothing suggested "that once published the amendment would be inapplicable to disputes arising, or arising out of events occurring, before such publication." (Emphasis in original.)

Lamenting the absence of a savings clause that precluded application of amendments "to disputes which arose (or of which Amway had notice) before the amendment," the Fifth Circuit held that the arbitration agreement was illusory and unenforceable. Id. at 257.

Similarly, in Peleg v. Neiman Marcus Group, Inc., 140 Cal. Rptr. 3d 38 (Cal. Ct. App. 2012), the California court analyzed an arbitration provision under Texas law and found it illusory. The provision required 30 days' notice before an employer's unilateral amendment to the arbitration provision could take effect. The amendment was inapplicable to filed claims. Under Texas law, the California court concluded:

> The vice of the modification provision in
> this case is that it allows the employer to
> manipulate the arbitration process, tailoring
> it to fit specific cases, either by making
> the process more difficult or more expensive
> for the employee, or by revoking the
> Agreement in the belief that a judicial forum
> is preferable. Accordingly, if a claim has
> accrued or if the employer knows about a
> claim, all parties to the Agreement should be
> bound by the version in effect at that time;
> no changes should apply after the point of
> accrual or knowledge.

Id. at 63. The court put its view even more clearly when it said, "[T]he Agreement fails because it exempts only filed claims--it does not go far enough. The Agreement should also exempt claims that have accrued or are known to the employer that are not filed within 30 days." Id. at 61. The court concluded

that Texas law on this point was not inconsistent with any fundamental California policy.  Id. at 68.

In Phox v. Atriums Management Co., 230 F. Supp. 2d 1279 (D. Kan. 2002), the Kansas district court, applying Kansas law, found an arbitration provision in which the employer retained the right to "alter, amend, eliminate or modify [the] agreement prior to the initiation of any proceeding" to be illusory.  Id. at 1281.  The court noted: "At the time plaintiff signed the Employee Acknowledgment Form, defendant had the unilateral right to revise or cancel the arbitration clause before plaintiff filed a claim.  Defendant's after-the-fact decision not to exercise this right does not alter the illusory nature of its original promise to arbitrate."  Id. at 1283.

The New Mexico Supreme Court has applied similar reasoning.  In Flemma v. Halliburton Energy Services, Inc., 303 P.3d 814 (N.M. 2013), the court concluded that an arbitration agreement permitting the employer to amend on 10 days' notice, except as to disputes for which a proceeding had been commenced, was unconscionable and illusory under New Mexico law.  Id. at 822.  The court explained:

> [T]his agreement allows Halliburton to amend its terms even after a claim accrues and before any proceeding is initiated. In effect, Halliburton could change the rules of the game just before it starts. For example, an employee who has been terminated may later find out, prior to initiating a case, that the terms of arbitration have become more

17

> restrictive. Halliburton can do this at any
> time and only give notice to current
> employees. Therefore, the employees most
> likely to use the [Dispute Resolution Program
> ("DRP")], i.e., terminated employees, would
> not even get notice of changes to the DRP,
> which could negatively affect their claims.

Id.

It is little comfort to an employee that the United Healthcare Arbitration Policy, unlike the provision before the New Mexico Supreme Court or the provision that the Hawaii Supreme Court examined in Douglass, requires notice of amendments and a delayed effective date. It appears to this court that United Healthcare's right to amend the Arbitration Policy extends to the notice requirement and delayed effective date. That is, United Healthcare could conceivably eliminate or shorten the notice period and delete or change the present January 1 effective date. While this change would require 30 days' notice and would not take effect until the following January 1, once such a change took effect, there might be no timing restrictions on future changes. The only remaining restriction would concern existing arbitration demands. In short, an employee with a potential claim, even one known to the employer, could find herself immediately subject to a changed Arbitration Policy. This court is not accusing United Healthcare of ever having implemented such a change or of having contemplated anything along these lines. Indeed, United Healthcare may, in drafting the Arbitration

18

Policy, have thought the notice and delayed implementation provisions would remain constant. But the Arbitration Policy allows such a change. This means that United Healthcare did not provide consideration for the Arbitration Policy.

The present case is admittedly a closer call than the Douglass case decided by the Hawaii Supreme Court. Still, this court predicts that, if the Hawaii Supreme Court were faced with the issue before this court, the Hawaii Supreme Court would conclude that, because United Healthcare retains the ability to amend or terminate the Arbitration Policy even with respect to claims it knows have accrued, the Arbitration Policy is illusory notwithstanding its amendable provisions concerning notice, effective date, and nonapplicability to existing arbitration demands.

Without bilateral consideration, the Arbitration Policy is not a valid arbitration agreement under Hawaii law, and cannot, therefore, be enforced even if Keanini consented to it.

### B. Whether an Arbitration Agreement Exists Cannot Presently Be Determined.

Even if the requirements going to notice and implementation of changes in the Arbitration Policy render the Arbitration Policy enforceable, this court denies the motion to compel arbitration because, on the present record, it is not clear that the parties actually agreed to arbitrate. Keanini alleges that she never received and never signed the Arbitration

19

Policy, while United Healthcare alleges that Keanini agreed to the Policy on the company's intranet.  The court is asked to rely on a declaration by a United Healthcare employee describing the significance of computer keystrokes allegedly indicating that Keanini agreed to the Arbitration Policy, and on a purported computer acknowledgment by Keanini.  Even if this evidence presents a prima facie case that Keanini agreed to the Arbitration Policy, a prima facie case only shifts the burden to Keanini to present evidence to the contrary.  Keanini meets this burden for purposes of this motion with her own declaration denying that she agreed online to the Arbitration Policy.  ECF No. 21, ¶¶ 5-7.

The court views the record as indicating a factual dispute about whether Keanini agreed or not.  Resolution of this dispute turns on a number of factors, including the credibility of Keanini herself and of United Healthcare representatives who may explain the workings of the intranet.  In the face of this factual dispute, the court cannot determine whether there is an arbitration agreement.  The existence of such an agreement is a foundational requirement for enforcing the Arbitration Policy.

If the making of the arbitration agreement is in issue, a court "shall proceed summarily to the trial thereof."  9 U.S.C. § 4.  Thus, even if the Arbitration Policy were enforceable notwithstanding Douglass, the present motion to compel would be

denied and the issue of whether the parties agreed to the Arbitration Policy would be tried.  Only if the factfinder said there was an agreement would arbitration be compelled (assuming the enforceability of the Arbitration Policy).

      **C.    Proceedings On Keanini's Claims Need Not Be Stayed.**

Because the court determines that the Arbitration Policy is unenforceable, and that, even if it were enforceable, arbitration could not be compelled given a factual dispute, United Healthcare's motion to stay proceedings is denied.

**V.      CONCLUSION.**

For the foregoing reasons, United Healthcare's motion to compel arbitration and to stay proceedings is denied.

All of Keanini's claims remain pending before this court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 21, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Keanini v. United Healthcare Services, Inc., et al., Civ. No. 13-00495 SOM/BMK; ORDER DENYING MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

21